FILED
SUPERIOR COURT
OF GUAM

2023 FEB 10 PM 2: 55

CLERK OF COURT

BY:



## IN THE SUPERIOR COURT OF GUAM

LYNDA FRENAY,

Plaintiff,

vs.

PIERRE X. FRENAY,

Defendant.

**Domestic Case No. DM0031-20**

**DECISION AND ORDER RE DEFENDANT'S MOTION TO ENFORCE AND FOR SUMMARY JUDGMENT**

In this divorce action, Defendant Pierre X. Frenay moves to enforce a Mediation Settlement Term Sheet as a marital settlement agreement with Plaintiff Lynda Frenay. Upon review of the record, evidence, and testimonies offered by the parties, the Court determines that the parties entered into a binding agreement inclusive of spousal support. The Court therefore GRANTS Pierre's motion.

## I.   DISCUSSION OF FACTS

On the eve of the parties' divorce trial, they made a final effort to mediate their dispute. The mediation resulted in a "Mediation Settlement Term Sheet" signed by the parties, their attorneys, and the mediator. Decl. Counsel, att. (Oct. 31, 2022) (referred to herein as "Term Sheet"). Among other terms, the Term Sheet indicated:

- A mutual divorce based on irreconcilable differences;

- "Interlocutory and final decrees, pursuant to an Integrated Marital Settlement Agreement;"

- Lynda to receive the parties' two residences (and accompanying mortgages) in Hawaii, and Pierre to receive the residence in Guam;

- The parties to share equally in all bank accounts and Pierre's retirement account;

- Lynda to exclusively receive her full retirement account;



- Pierre to provide Lynda with fifteen months of COBRA, valued at $10,000;

- Pierre to provide Lynda with moving expenses covered by Pierre's employer, valued at $25,000;

- Each side to pay their own fees and costs;

- "*Settlement Agreement, Interlocutory and Final Decrees, and QDRO to be signed and submitted to Court before October 7, 2022, with exchange of deeds and transfer of cash assets, including possession of La Stella Maris, to occur not later than November 1, 2022."; and,

- "*Balance Statements/Verification for cash accounts and retirement accounts to be provided and updated before October 7, 2022."

In support of the present motion, Pierre submitted a Schedule A, referenced in the Term Sheet. Decl. Counsel, att. Part one of Schedule A listed thirteen cash, investment, and retirement accounts and divided them as reflected in the Term Sheet. In total, in addition to the real property distribution, Lynda would receive roughly $1.7 million in monetary assets, and Pierre would receive $1.5 million. Part two of Schedule A listed a distribution of the parties' home furnishings. Lynda, however, disputes that Schedule A as submitted was considered part of the Term Sheet when she signed it, asserting that Pierre did not provide it until after mediation was completed. Test. Lynda Frenay at 10:13:11-20 (Dec. 20, 2022).

Since signing the Term Sheet, the parties have assumed control over the real properties as expressed therein and in part two of Schedule A. Test. Lynda Frenay at 10:14:45-50. Lynda has also moved to Hawaii and availed of the moving expenses under Pierre's former employer. Test. Lynda Frenay at 10:14:51-58. However, Lynda, now self-represented, refuses to sign the deeds to assume responsibility over the mortgages for the two Hawaii properties; meanwhile, Pierre continues to pay the mortgage amounts. Test. Pierre Frenay at 10:50:34-39 (Dec. 20, 2022). Lynda claims that she cannot afford the mortgages without a provision for spousal support in addition to the sums she received under the Term Sheet. Submission at 4 (Nov. 28, 2022).

ORIGINAL

Pierre now asks the Court to enforce the Term Sheet and enter summary judgment. At the hearing on the motion, Lynda and Pierre both testified. In summary, Lynda argues that she did not have all relevant information before signing the Term Sheet, that Pierre omitted certain information, and that account statements were not disclosed as agreed upon. She also seeks clarification of certain terms and spousal support. In contrast, Pierre contends that all disclosures were provided and that she is not entitled to spousal support. Decl. Def. ¶ 7 (Dec. 20, 2022).

## II.     ANALYSIS

### A. Summary Judgment and Enforcement of Settlement Agreements.

Under Guam law, a court may treat a motion to enforce a settlement agreement like a motion for summary judgment using the standard under Guam Rule of Civil Procedure 56. *Sharrock v. McCoy*, 2016 Guam 7 ¶ 109. According to that rule, a court may issue summary judgment if there is no genuine issue of material fact that the parties entered into a binding settlement agreement. GRCP 56(a). However, if there is a genuine issue of material fact, the Court may review extrinsic evidence to resolve ambiguities and enforce a settlement agreement. *Sharrock*, 2016 Guam 7 ¶ 87; *Wasson v. Berg*, 2007 Guam 16 ¶ 11.

### B. The Term Sheet is a binding settlement agreement.

A mediation agreement is construed like a contract. *Perez v. Monkeypod Enters.*, 2022 Guam 12 ¶ 18. A valid contract must have an offer, acceptance, consideration, and mutual assent to the essential terms. *Sharrock*, 2016 Guam 7 ¶ 95. "Under this approach, we 'discern and give legal effect to the intent of the parties at the time of contracting' by 'generally, and whenever possible' restricting our analysis to the plain meaning of the contract terms." *Id.*; *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 8; 18 GCA § 87105. For this reason, in divining the parties' intent, the Court focuses on the language within the four corners of the Term Sheet. *See* 18 GCA § 86107 ("The execution of a contract in writing . . . supersedes all the negotiations or



stipulations concerning its matter which preceded or accompanied the execution of the instrument."). "However, if the intent of the parties is not unambiguously expressed by the language of the [contract], the district court may review extrinsic evidence and enter subsidiary factual findings as to the parties' intent . . . ." *Sharrock*, 2016 Guam 7 ¶ 87 (citing *Thatcher v. Kohl's Dep't Stores, Inc.*, 397 F.3d 1370, 1374 (Fed. Cir. 2005)).

On its face, the Term Sheet conforms to all aspects of a binding marital settlement agreement. The two pages of terms appear to address and divide all of the parties' assets. The Term Sheet also addresses the basis for the divorce (irreconcilable differences) and indicates that the parties will execute interlocutory and final divorce decrees along with an "Integrated Marital Settlement Agreement." The signatures by all present--not just the parties, but their counsel and the mediator--further bolster the position that Lynda and Pierre accepted and mutually assented to the Term Sheet's essential terms involving their divorce.

However, Lynda insists that Pierre did not meet the October 7 deadline to provide bank statements and verifications for cash and retirement accounts. Due to that alleged failure by Pierre,[1] Lynda questions the accuracy of the Term Sheet's division of assets as reflected in Schedule A. Test. Lynda Frenay at 10:19:41 - 10:20:36. Furthermore, according to Lynda, "the agreement would be null and void if all the documents were not submitted as requested." Test. Lynda Frenay at 10:02:09-31. She acquired this understanding after consulting with her attorney. Test. Lynda Frenay at 10:32:23-29.

The Court again turns to the Term Sheet's plain language, as well as "[t]he whole of a contract . . . taken together, so as to give effect to every part, if reasonably practicable, [with] each clause helping to interpret the other." 18 GCA § 87107. Lynda's dispute seems to center on

---

[1] She has specific concerns about certain Schwab investment accounts. Submission at 2; Test. Lynda Frenay at 10:20:36.

ORIGINAL

the Term Sheet's provision that "*Balance Statements/Verification for cash accounts and retirement accounts to be provided and updated before October 7, 2022." Term Sheet at 2. "Verification," however, is undefined. Lynda's interpretation conforms to the plain meaning of "Verification:" "The process of testing or finding out if something is true, real, accurate, etc." VERIFICATION, Cambridge Academic Content Dict. (https://dictionary.cambridge.org/dictionary/english/verification) (last visited Feb. 7, 2023). Under this reading, Lynda would have the right to receive statements and be afforded the chance to ensure their accuracy.

However, Lynda's interpretation overlooks the term "Verification" in the context of that specific provision as well as the rest of the Term Sheet. When read in full, the relevant provision regarding "Balance Statements/Verification" indicates that information was to be "provided and updated" by a certain date. It does not mention a process for Lynda to check on the information's accuracy. Furthermore, other parts of the Term Sheet enlighten the provision's meaning. The date for turning over documents--October 7--is also the date for the parties to sign the Settlement Agreement, Interlocutory and Final Decrees, and QDRO *and* to submit them to the Court. Term Sheet at 2. Construing these deadlines together, the Term Sheet did not incorporate offering Lynda time to engage in a process of verifying the accuracy of the bank statements.

Next, regarding Lynda's belief that if Pierre did not furnish the documents, the Term Sheet was null and void, Guam caselaw directs that in interpreting a contract, a Court cannot consider a party's subjective beliefs and understanding of the meaning of certain terms and provisions unless they are ambiguous. *Sharrock*, 2016 Guam 7 ¶ 87. As the Bank Statement/Verification obligation is not ambiguous, the Court cannot consider Lynda's subjective beliefs.



ORIGINAL

Finally, the Court recognizes a disagreement as to whether Pierre complied with the Term Sheet. Pierre states, "ALL disclosures were made and clarified," but he also agrees that documents continued to be provided after the October 7 deadline. *See* Decl Def. ¶ 7; Submission, Ex. 1 (October 17 email from Pierre's attorney disclosing further documents). However, whether Pierre complied with the Term Sheet is different from whether the Term Sheet forms a binding agreement. If Lynda contends that Pierre did not comply with the Term Sheet, she can file a motion seeking relief from a breach of the Term Sheet, including deeming it null and void if appropriate. But, for the present, the question before the Court is whether the Term Sheet can be enforced as a contract--and the Court answers in the affirmative.

## C. Lynda is Not Entitled to Spousal Support

Lynda asks this Court to award her spousal support outside of the Term Sheet. The Term Sheet itself is silent on the issue of spousal support, except for one notable term--that the parties enter into an "*Integrated* Marital Settlement Agreement." Term Sheet (Emphasis added).

"An agreement is 'integrated' if the parties have agreed that the provisions for the division of property and the provisions for support constitute reciprocal consideration. The support provisions are then necessarily part of and parcel of a division of property." *Lujan v. Lujan*, 2012 Guam 7 ¶ 41. By the plain meaning of the term "Integrated Marital Settlement Agreement," the Term Sheet indicates that support provisions were encompassed within the property distribution.

But there are other indications as well. For example, in *Lujan*, the Guam Supreme Court did not explicitly determine that a marital settlement agreement was integrated, but it held that a court might find as such if the spouse waiving spousal support received a more favorable division of the community property. 2012 Guam 7 ¶ 33. That occurred here. Lynda received two of the parties' three homes and half of Pierre's retirement while keeping one hundred percent



of her retirement. Moreover, Lynda benefited from the advice of counsel when negotiating and ultimately agreeing to the Term Sheet--including its provision that the Marital Settlement Agreement be "integrated," which is a technical, legal term with implications that she would not receive spousal support.

In addition, *Lujan* advises that one conclusive factor that a settlement is integrated is a statement of the parties to reach a final settlement of their rights and duties concerning property and support.[2] Again, that is the case here, as the Term Sheet indicated that the parties agreed to execute final decrees.

In conclusion, the Term Sheet contemplates an integrated property settlement, meaning that the property distribution encompassed spousal support. By agreeing to the Term Sheet, Lynda forfeited an additional or separate award of spousal support.

## III.    CONCLUSION AND ORDER

There is no genuine issue of material fact that Lynda entered into a binding settlement agreement. The agreement addressed all of the parties' properties and was signed by both parties. Moreover, the Term Sheet contains no ambiguities and is enforceable as written. Finally, the Term Sheet was "integrated," meaning it covered spousal support. The Court therefore GRANTS Pierre's motion and finds that Lynda is contractually obligated to perform her promises under the Term Sheet.

---

[2] *Lujan* mentions two other conclusive factors indicating that an integrated agreement exists: a statement that the property and support provisions are each consideration for the other, and an express waiver of all rights arising out of the marital relationship except those expressly set out in the agreement. 2012 Guam 7 ¶ 41. This Court acknowledges that these statements are not expressed in the parties' Term Sheet. However, unlike in this case, there was no explicit mention in *Lujan* that the agreement was "Integrated." The Court finds that the inclusion of "Integrated" in the Term Sheet is significant and has greater value to the Court's determination than these two other factors discussed in *Lujan*.

# ORIGINAL

The Court sets a Status Hearing for March 8, 2023, at 9:30 a.m.[3]

SO ORDERED this 9th day of February 2023.

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:
*Lynda Frenay,*
*Arriola Law Firm*
Date: 2/10/23  Time: 3:00pm

Deputy Clerk, Superior Court of Guam

Appearing Parties:
Lynda Frenay, Plaintiff, self-represented
Joaquin C. Arriola, Jr., Esq., Arriola Law Firm, for Defendant Pierre X. Frenay

_____

[3] To attend, go to https://guamcourts-org.zoom/us and enter Meeting ID: 864 4387 2213; Password: JEMI.

ORIGINAL